NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 5, 2013[*]
Decided April 26, 2013

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

DIANE P. WOOD, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 12-2880

| | |
|---|---|
| D.W., through her parents JOHNNY and BEVERLY WILLIAMS, <br>     *Plaintiff-Appellant,* <br><br> *v.* <br><br> MILWAUKEE PUBLIC SCHOOLS, <br>     *Defendant-Appellee.* | Appeal from the United States District Court for the Eastern District of Wisconsin. <br><br> No. 10-CV-1113-JPS <br><br> J.P. Stadtmueller, <br> *Judge.* |

**O R D E R**

Johnny and Beverly Williams and their daughter, D.W., appeal the district court's entry of summary judgment in favor of Milwaukee Public Schools, arguing that the schools violated the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400–1482, by failing to provide D.W. with a free, appropriate public education. We affirm.

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

D.W. has received special education since the first grade, when she was assessed with moderate cognitive disability. Her most recent intelligence tests indicate an IQ of 49. Through the eighth grade, D.W. attended special, "multi-categorical" classes in which students with various disabilities are taught together in the same classroom. These classes were less restrictive than the "self-contained" classes serving only children with cognitive disabilities.

While D.W. attended eighth grade, a team of educators developed an "individualized education plan," or IEP, covering the remainder of her eighth-grade year and first year of high school. This plan noted that D.W. performed at a first-grade level in math, a second-grade level in reading and language arts, and about 60 percent of the time displayed inappropriate behavior, such as refusing to participate or follow instructions. The plan, which also noted D.W.'s lack of functional and organizational skills, identified the following goals: advancing D.W.'s math skills to the second-grade level; advancing her reading, language arts, and writing skills to the third-grade level; and cooperating with teachers 60 percent of the time. Based on her eighth-grade performance, the IEP team doubted that D.W. would succeed in a multi-categorical classroom in ninth grade, but they acquiesced to her parents' strong preference that she attend a multi-categorical class that would keep her on track to receive a high school diploma.

D.W. struggled in the ninth grade at Rufus King High School, where she received Ds and Us (for "unsatisfactory") in most of her subjects and frequently refused to participate in class. After reviewing her first ninth-grade progress report, D.W.'s parents met with her IEP team, which prepared a behavioral intervention plan to address D.W.'s refusal to participate. Under this plan, D.W. would receive several hours of one-on-one instruction per day, extra time for tests, modifications to her assignments, and daily progress reports. When her performance still did not improve, her parents again met with the IEP team, which recommended that D.W. be placed in a special class for students with cognitive disabilities at Riverside High School. But because D.W.'s parents opposed the move, the team tried modifying her behavior and education plans by providing her with classwork at her instructional level, seating her near the teacher, and providing positive feedback. When D.W. still did not show improvement, the team concluded that she should attend the self-contained cognitive disability class for the next school year.

D.W.'s parents then requested a due process hearing from the Department of Public Instruction, *see* WIS. STAT. § 115.80(1)(a); 20 U.S.C. § 1415(f)(1)(a), claiming that MPS had failed to provide their daughter with a free, appropriate public education. They alleged that MPS had violated provisions of the IDEA requiring it to develop and follow an IEP suited to D.W.'s needs and to educate D.W. in the least restrictive environment possible. *See* 20 U.S.C. § 1412(a)(4)–(5). They also maintained that the behavioral components of D.W.'s IEP were ill

considered and that teachers had failed to prepare the daily reports and make the accommodations called for under the IEP.

After a hearing before the Wisconsin Division of Hearings and Appeals at which both parties were represented by counsel, an administrative law judge determined that D.W.'s parents had failed to establish that her IEP was inappropriate or improperly implemented or that Riverside's self-contained cognitive-disability class would be more restrictive than necessary. The ALJ declined to find fault with D.W.'s behavioral-intervention plan, pointing out that the IDEA does not specify any substantive requirements for such plans. He also noted that D.W.'s parents presented little evidence beyond her poor grades to suggest that her teachers had not followed the IEP. Because D.W.'s grades were based on objective criteria applied to all ninth-grade students, the ALJ explained that they were not relevant to her teachers' efforts to help her reach her IEP goals.

D.W.'s parents sought review of the ALJ's decision in Wisconsin state court, and MPS removed the case to federal court based on federal question jurisdiction. In the district court, D.W.'s parents moved to introduce additional evidence, including report cards and class work, which they said showed that "the facts the school district relied upon for its placement decision, and the facts the Administrative Law Judge relied upon for his decision have significantly changed." The court denied that motion on grounds that D.W.'s parents had failed to explain why the evidence (much of which predated the ALJ's decision) was not presented at the administrative level or how it would otherwise be probative.

The district court then granted summary judgment for MPS, finding that the ALJ's decision was supported by a preponderance of the evidence. The district court reiterated that the IDEA does not include substantive requirements for behavioral-intervention plans. The court also noted that although there was little evidence about whether D.W.'s teachers had prepared progress reports, her parents bore the burden of proof on this issue—and D.W.'s parents had identified no evidence apart from her poor grades to suggest that her teachers had not implemented her IEP.

In this appeal, D.W.'s parents assert that she has been denied a free, appropriate public education and maintain that D.W. should be returned to Rufus King High School, where she can earn a high school diploma. They principally challenge the district court's decision to uphold the ALJ's conclusions that D.W.'s education plan was appropriate and that her teachers complied with it. They continue to hold up D.W.'s failing grades as evidence that her teachers failed to teach at her instructional level as required by her IEP.

The initial question in this court is whether there is an ongoing controversy between the parties. The dispute concerns past school years, which poses the question whether the

case has become moot. D.W.'s parents contend, however, that they would like her returned from Riverside High School to Rufus King High School, from which she could receive a regular diploma. The IDEA permits a court to "grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii). If this court should conclude that defendants violated the statute by transferring D.W. to the program at Riverside, it could in principle order her return to Rufus King. *See Burlington School Committee v. Massachusetts Department of Education*, 471 U.S. 359, 370 (1985). This potential remedy demonstrates that a constitutional case or controversy still exists, so we address the appeal on the merits.

The district court did not commit a clear error. As both the ALJ and the district judge noted, D.W.'s poor grades do not show that her teachers failed to made a good-faith effort to help her meet the goals in her educational plan. The record does not compel a conclusion that better work by the teachers would have led to higher grades; indeed, the record does not compel a conclusion that the teachers' work fell short.

The parents contend that the educational plan should have included "assistive technology," *see* 20 U.S.C. § 1414(d)(3)(B)(v), but they do not tell us what devices or software that would have entailed. Indeed, they did not present this contention to the ALJ, so it has been forfeited. It was not properly before the district court and has not been preserved for decision in this court. *See* 28 U.S.C. § 1415(i)(2)(A); *Family & Children's Center v. School City of Mishawaka*, 13 F.3d 1052, 1056 (7th Cir. 1994). We therefore do not discuss this subject further.

D.W.'s parents also assert that the cognitive-disability class at Riverside High School is more restrictive than necessary, and they highlight the nonacademic benefits of educating disabled students in mainstream classrooms. But although schools must educate disabled students with their nondisabled peers to the "maximum extent appropriate," 20 U.S.C. § 1412(a)(5)(A), a student challenging a placement as unduly restrictive must do more than show that she is obtaining *some* benefit from mainstream classes. *See Bd. of Educ. of Twp. High Sch. Dist. No. 211 v. Ross*, 486 F.3d 267, 277 (7th Cir. 2007); *Beth B. v. Van Clay*, 282 F.3d 493, 499 (7th Cir. 2002). The relevant inquiry is whether the student's education in the mainstream environment was "satisfactory" (or could be made satisfactory through reasonable measures), *see Ross*, 486 F.3d at 277. In light of the opinions from D.W.'s IEP team that she could not learn satisfactorily in the multi-categorical classroom, the district court did not err in finding that the record supported the ALJ's decision.

D.W.'s parents also suggest that the district judge violated due process by reviewing (and, they say, relying on) two filings (a response to D.W.'s brief on the merits and a submission opposing the introduction of additional evidence) that MPS inadvertently failed to serve on them. But D.W.'s parents have not explained how they have been prejudiced by

this slip-up. Ex parte contacts with the district court violate due process only if they "render it impossible for the district court to fairly consider a plaintiff's arguments, or are not made a matter of record in the case and do not provide an opportunity for a plaintiff to respond to them." *Vollmer v. Publishers Clearing House*, 248 F.3d 698, 710 (7th Cir. 2001). Here, the district court entered the briefs on its docket and allowed the plaintiffs to respond to them, curing any potential prejudice. *Id.*

D.W.'s parents also generally assert that the district court abused its discretion by denying their motions to consider new evidence and to supplement the record. But the plaintiffs make this argument without elaboration or citation to authority and have therefore waived the issue. *See Ajayi v. Aramark Business Servs., Inc*, 336 F.3d 520, 529 (7th Cir. 2003). And regardless, because they did not explain their failure to introduce their additional evidence at the due-process hearing, the district court did not abuse its discretion in declining to consider the documents. *See Monticello Sch. Dist. No. 25 v. George L.*, 102 F.3d 895, 902 (7th Cir. 1996).

**AFFIRMED**